IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FREDERIC STRONG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3:02-CV-1758-P |
| CITY OF DALLAS, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the court is defendants the City of Dallas, Michael Doeringsfeld, Dora Alicia Saucedo-Falls, Randy Hampton, and Madeleine Johnson's (collectively "Defendants") Motion for Summary Judgment, filed November 9, 2004.  Plaintiff filed his Response December 6, 2004, and defendants' filed their Reply December 20, 2004.  After considering the parties' briefs and arguments, as well as the applicable law, the Court GRANTS defendants' Motion for Summary Judgment.

## I.      Background Facts and Procedural History

Frederic Strong ("Plaintiff") began classes at the Dallas Police Academy on September 20, 1996, and after graduating, he joined the Dallas Police Department ("DPD") on June 19, 1997.  Strong I ("S1") Pl.'s Orig. Compl. ¶ 11.[1]  After completing a probationary period, plaintiff worked as a patrol officer for the DPD.  S1 Mem. Op. Order at 3 (Jan. 17, 2002) [hereinafter "S1 Mem. Op. Order].

_____

[1] This order also discusses a prior suit brought by plaintiff, which will be referred to as "Strong I."  Any orders or documents cited from the prior Strong I suit will include a description of "S1."

On June 3, 1998, a complaint was filed against plaintiff related to his activities with his brother Phillip Strong. S1 Mem. Op. Order at 4. Phillip Strong ran a used car sales business for which plaintiff was an authorized agent. On July 15, 1998, the DPD notified plaintiff that he was being investigated by the DPD Public Integrity Unit, and the investigation was later forwarded to the Internal Affairs Division ("IAD"). *Id.* The IAD investigation was assigned to Sergeant Michael Doeringsfeld. During the course of his investigation, Sergeant Doeringsfeld collected testimonial and documentary evidence, including evidence from several interviews with plaintiff himself. *Id.*

Sergeant Doeringsfeld completed his investigation of plaintiff and submitted a report, along with affidavits and other written evidence, on May 26, 1999. S1 Mem. Op. Order at 4-5. During the investigation, Sergeant Doeringsfeld developed ten separate allegations of wrongdoing by plaintiff, and he found that each of the allegations should be sustained. *Id.* at 5.

The ten allegations included findings that plaintiff had violated either DPD Code of Conduct or DPD General Orders when plaintiff allegedly (1) purchased motor vehicles from Dealers Auto Auction without payment; (2) sold a motor vehicle that was acquired by theft; (3) passed a forged document to obtain a Certified Copy of a vehicle title; (4) failed to submit a Request for Permission for Outside Employment, Other Than Police Duty Form for the year 1997; (5) failed to submit a Request for Permission for Outside Employment, Other Than Police Duty Form from January 1, 1998, through May 11, 1998; (6) engaged in personal business off-duty while he obtained motor vehicle titles while wearing his DPD uniform; (7) gave an inconsistent statement when he stated that he did not own a 1997 Ford Expedition; (8) wore his

DPD uniform while attending a civil court proceeding; (9) made an untruthful statement when he stated that he did not earn any compensation in the sale of motor vehicles; and (10) used his position as a police officer for private gain when he identified himself to Ms. Bonnie Benner as a Dallas Police Officer for private gain. S1 Mem. Op. Order at 5-7.

Sergeant Doeringsfeld's investigation report was forwarded to Deputy Chief of Internal Affairs Dora Alicia Saucedo-Falls, who reviewed the investigation and concluded that it indeed produced sufficient evidence to sustain the allegations against plaintiff. S1 Mem. Op. Order at 5. Thereafter, the investigation was forwarded to plaintiff's chain of command. His immediate supervisor, Sergeant Wilford L. Suber, recommended a forty-five day suspension, but the rest of plaintiff's chain of command, Captain J.W. McDonald, Assistant Chief John C. Holt, Jr., and Executive Assistant Chief R.L. Jackson, recommended termination. *Id.*

The investigation was then forwarded to Chief of Police Bennie Click ("Chief Click"). S1 Mem. Op. Order at 5. Chief Click conducted a disciplinary hearing regarding the allegations developed against plaintiff on July 23, 1999. Plaintiff had an opportunity during the hearing to respond to the allegations against him. *Id.* On the same day of the hearing, Chief Click terminated plaintiff's employment with the Dallas Police Department. He has stated that plaintiff was terminated for the reasons described in the ten allegations developed against him. *Id.* The City of Dallas subsequently issued a press release in the Dallas Morning News regarding plaintiff's termination. Pl.'s Orig. Compl. ¶ 34.

Plaintiff appealed Chief Click's decision to Assistant City Manager Jill A. Jordan ("Manager Jordan") on September 27, 1999. S1 Mem. Op. Order at 7. Manager Jordan

conducted a hearing regarding plaintiff's termination, and on October 18, 1999, issued her

determination by letter, upholding Chief Click's decision. *Id.*

Plaintiff then sought to appeal Jordan's decision upholding his termination by appealing

to the Administrative Law Judge ("ALJ") pursuant to section 34-40(c) of the Dallas City Code.

S1 Mem. Op. Order at 7; Pl.'s Orig. Compl. ¶ 37.  The City of Dallas requested a postponement

of the hearing by the ALJ pending resolution of a criminal investigation of plaintiff's action by

the U.S. Attorney's office.  S1 Mem. Op. Order at 7; Pl.'s Orig. Compl. ¶ 38.  The hearing was

subsequently postponed and has never been held.  S1 Mem. Op. Order at 7.  Numerous

communications took place among plaintiff, the City Attorneys' Office, and the City's Civil

Service Board regarding the ALJ hearing postponement.  S1 App. Supp. Pl.'s Mot. Partial

Summ. J. at 138-143, 146-150, 152-54, 156-57.  In one instance, plaintiff wrote a letter dated

October 23, 2000 to the City in which he declared that his rights to due process were being

violated due to the postponement.  S1 App. Supp. Pl.'s Mot. Partial Summ. J. at 157.

Plaintiff brought suit in this Court on July 17, 2000 ("Strong I").  S1 Mem. Op. Order at

2.  He sued the City of Dallas ("City") for race discrimination in violation of Title VII.  He also

sued the City, and in their individual capacities, Bennie Click, Michael Doeringsfeld, Alicia

Saucedo-Falls, and Randy Hampton (collectively "City Defendants") for violation of his right to

equal protection under 42 U.S.C. § 1983.  *Id.* at 2-3.  Plaintiff also sued the Strong I City

defendants as well as Bill Roberts for violation of 42 U.S.C. § 1985 for conspiracy to

discriminate against him and deprive him of his right to employment.  *Id.* at 3.  Additionally,

plaintiff brought several state law claims against Dallas Auto Auction and Bill Roberts.  *Id.*

Plaintiff moved to amend his Strong I Complaint on October 24, 2001, to add additional claims against the City and the City defendants pursuant to section 1983 for denial of property rights and liberty interest without due process of law.  S1 Order at 2 (Dec. 11, 2001).[2]  However, the Court denied the motion to amend because plaintiff brought it well after the deadline for such a motion, and because he failed to meet his burden of showing oversight, inadvertence, or excusable neglect that might explain the delay.  *Id.* at 4.

The Court dismissed plaintiff's Strong I case on January 17, 2002, by granting the City and the City defendants' Motion for Summary Judgment, as well as defendants Dallas Auto Auction and Bill Roberts' Motion for Summary Judgment.  S1 Mem. Op. Order at 29.  At the same time, the Court denied plaintiff's Motion for Partial Summary Judgment.  *Id.*

Plaintiff subsequently appealed the judgment to the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit"), but he chose not to appeal the Court's denial of his motion to amend his Complaint.  *Strong v. City of Dallas*, 2002 WL 31845260, at *1 (5th Cir. 2002).  The Fifth Circuit affirmed this Court's holding in an unpublished opinion on December 11, 2002.  *Id.*

Meanwhile, on September 25, 2002, as a result of the criminal investigations undertaken by the U.S. Attorney's Office, a federal grand jury indicted plaintiff on multiple counts of mail fraud arising out of some of the same circumstances involved in the City's reasons for terminating plaintiff.  *United States v. Strong*, 371 F.3d 225, 226-27 (5th Cir. 2004)  The jury returned a guilty verdict on three counts.  *Id*. at 227.  However, the trial judge entered a verdict of acquittal on May 1, 2003, because the government did not show sufficient intent by plaintiff

---

[2]Strong I Order in which the Court denied Plaintiff's motion to amend his complaint.

to use the mail to further his fraudulent scheme. *Id.* The Fifth Circuit affirmed this decision on May 18, 2004. *Id.* at 231-32.

Plaintiff filed his Original Complaint in the current suit ("Strong II") on August 15, 2002, and he now brings forth three theories of recovery he failed to add in Strong I. Pl.'s Orig. Compl. at 1. Plaintiff first claims the City denied his property rights without due process of law pursuant to 42 U.S.C. § 1983. *Id.* at 11. Specifically, he asserts that the City's postponement of the ALJ hearing constituted a taking of his property right in continued employment, and that the City denied him minimum due process. *Id.* at 12. Second, plaintiff claims the City denied his liberty interest under 42 U.S.C. § 1983. To wit, plaintiff claims the City's denial of the ALJ hearing denied him a name clearing hearing, which constituted a taking of his liberty without minimum due process. Finally, plaintiff claims that pursuant to 42 U.S.C. § 1985, defendants Bennie Click, Michael Doeringsfeld, Dora Alicia Saucedo-Falls, Randy Hampton, Madeleine Johnson, and Raymond Martinez in their individual capacities, conspired to deprive plaintiff of his liberty and property rights. *Id.*

Plaintiff has never obtained service upon defendants Bennie Click and Raymond Martinez. Br. Supp. Defs.' Mot. Summ. J. at 6. Defendants the City of Dallas, Michael Doeringsfeld, Dora Alicia Saucedo-Falls, Randy Hampton, and Madeleine Johnson now move for summary judgment on all claims brought against them based on the affirmative defenses of *res judicata* and collateral estoppel. *Id.* at 1.

## II.    Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to

interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold*, *Inc*., 369 U.S. 654, 655 (1962). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323.

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The party opposing the motion for summary judgment cannot defeat the motion unless it provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent a summary judgment. *Id.* at 248-50; *Abbot v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he bears the burden of proof at trial, summary judgment is mandatory. *Celotex*, 477 U.S. at 322-24

Finally, the Court has no duty to search the record for triable issues. *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise matter in which the evidence supports his or her claim." *Id.* A party may not rely upon "unsubstantiated assertions" as competent summary judgment evidence. *Id.*

## III.   *Res Judicata*

Under *res judicata*, also referred to as claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). *Res judicata* "bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication, . . . not merely those that were adjudicated." *Nilsen v. City of Moss Point*, 701 F.2d 556, 560 (5th Cir. 1983). Thus, "one who has a choice of more than one remedy for a given wrong . . . may not assert them serially, in successive actions, but must advance all at once on pain of bar." *Id.*

For a prior judgment to bar an action on the basis of *res judicata*, four elements must be met:  (1) the same cause of action must be involved in both suits; (2) the parties in both suits must be identical (or at least in privity with each other); (3) the prior judgment must have been rendered by a court of competent jurisdiction; and (4) the decision in the prior proceeding must have been a final judgment on the merits. *See Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, 1172 (5th Cir. 1992); *Nilsen*, 701 F.2d at 559.

Plaintiff disputes only the first element, which requires the same cause of action in both suits.

### A.    The cause of action must be the same

The Fifth Circuit applies a transactional test to determine whether two suits involve the same cause of action. *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 938 (5th Cir. 2000). "[T]he critical issue is not the relief requested or the theory asserted but whether plaintiff bases the two actions on the same nucleus of operative facts." *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990). The "transaction may be single despite different harms, substantive theories, measure or kind of relief." *Nilsen*, 701 F.2d at 560 n.6. In other words, "[t]he final 'judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever.'" *Nevada v. United States*, 463 U.S. 110, 130 (1983) (quoting *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948)).

The same cause of action for *res judicata* purposes encompasses not only those claims arising out of the same transaction but also those that "were or *could have been* advanced in support of the cause of action" in the former suit. *Nilsen*, 701 F.2d at 560. A claim includes "all the remedial rights of the plaintiff against the defendant as growing out of the relevant transaction (or series of connected transactions)." *Id.* n.4. To allow a plaintiff to relitigate a claim that was or could have been brought in the prior suit would unjustly nullify the defendant's victory. *Id.* at 564.

Strong asserts that the transaction in Strong I was his termination by the Dallas Police Department while the transaction in the Strong II claims is the denial of his due process rights after his termination. (Plf.'s Resp. at 13, 14). Plaintiff further argues that "[t]he judgment in Strong I establishes, for claim preclusion purposes, only that Plaintiff did not prove that race

discrimination was the cause of his termination, nothing more." (Plf.'s Resp. at 9).  However, *res judicata* is broader in scope than what plaintiff seems to acknowledge.  There is no question that the claims asserted in the Strong I and Strong II are different.  The issue is do the claims arise out of the same transaction, or series of connected transactions, such that the claims alleged in Strong II could have been brought in Strong I.  As stated by the Fifth Circuit, "[u]nder the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 303, 313 (5th Cir. 2004) (internal citations and quotations omitted).  Thus, a series of connected transactions may constitute the same cause of action for *res judicata* purposes.

The harms alleged by the plaintiff in both lawsuits all flow from his July 1999 termination from the Dallas City Police Department.  Even though plaintiff maintains that his termination is not connected with his due process rights, which were allegedly violated by the ALJ hearing postponement, the fact remains that these alleged harms flow from his termination as a series of connected transactions.  The dispute plaintiff has with the City for not providing him the ALJ hearing opportunity never would have occurred if he had not been terminated.  Furthermore, plaintiff's request for the hearing rests solely on his desire to dispute his termination.  Additionally, because the claims in both suits stem from plaintiff's termination, the claims form a convenient trial unit.  Since the salient facts in Strong II occurred prior to the filing of Strong I, or shortly thereafter, and the claims in both suits are interrelated,  the claims in both suits would ordinarily be tried in one lawsuit. *Id.*  Indeed, in his motion for reconsideration

of the court's order denying him leave to amend his complaint in Strong I, plaintiff argued that "it would serve the interest of judicial economy for all of plaintiff's claims to be adjudicated in the same suit." Thus, at that time, plaintiff believed that the claims in the two suits should be tried together. The court agrees that the claims in Strong I and this case should have been tried in the same lawsuit. However, plaintiff did not timely move to amend his complaint in Strong I and offered no explanation for the delay, so his motion to amend was denied. Fifth Circuit law is clear that a claim denied in a prior suit as untimely filed is one which could have been brought in the prior proceeding. *Nilson v. City of Moss Point*, 701 F.2d at 563.

Although plaintiff asserts that he did not originally bring these claims in Strong I because his rights had not yet been violated and these claims had not yet arisen, his own actions and statements contradict this assertion. First, plaintiff filed Strong I in July 2000, but he had been disputing the postponement of the ALJ hearing since December 1999. Additionally, plaintiff knew the deadline for amending his pleadings in Strong I expired in March 2001. Nonetheless, he waited until October 2001 to try to amend his complaint despite having written a letter in October 2000 to the Civil Service Board, claiming a violation of his due process right to a fair hearing. Because plaintiff had been fighting for the ALJ hearing for a year and a half prior to the pleading amendment deadline, and had even claimed due process violations in his October 2000 letter with five months remaining to amend his complaint, the Court believes that he merely slept on his rights to add the two claims to Strong I, which he now asserts in this case.

The Court finds that Plaintiff's claims in this suit arise out of the same transaction or series of connected transactions as those brought forth in Strong I and therefore constitute the

same cause of action *res judicata* purposes.

**B.      Parties are identical or at least in privity**

Both Strong I and the current suit include defendant the City of Dallas as well as

defendants Michael Doeringsfeld, Alicia Saucedo-Falls, and Randy Hampton in their individual

capacities arising out of their official duties as employees of the City of Dallas.  Plaintiff does

not dispute any identity of parties issue pertaining to these defendants, and because each was a

party in Strong I, identity of parties is satisfied as to these parties.

This suit, however, also adds defendant Madeleine Johnson ("Johnson").  Nevertheless, a

defendant who was a non-party to a prior suit may assert *res judicata* if the defendant is in

privity with a named defendant in the prior suit.  *SunAmerica*, 962 F.2d at 1173.  Therefore,

claim preclusion does not require that parties be identical as they need only be sufficiently

related.  *Id.* at 1174.

> Where a plaintiff has sued parties in serial litigation over the same transaction;
> where plaintiff chose the original forum and had the opportunity to raise all its
> claims relating to the disputed transaction in the first action; where there was a
> "special relationship" between the defendants in each action, if not complete
> identity of parties; and where although the prior action was concluded, the
> plaintiff's later suit continued to seek essentially similar relief--the courts have
> denied the plaintiff a second bite at the apple.

*Id.* at 1175 (citing *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288 (5th Cir. 1989).

Similarly,

> [w]here . . . the relations between two parties are analogous to that of a principal
> and agent, the rule is that a judgment in favor of either, in an action brought by a
> third party, rendered upon a ground equally applicable to both, is to be accepted
> as conclusive against the plaintiff's right of action against the other.

*Id.* at 1174.

This Court finds sufficient relation between defendants Johnson and the City of Dallas to establish privity for purposes of identity of parties.  As previously determined, the two suits brought by plaintiff arise out of the same transaction or series of connected transactions, and plaintiff chose the original forum in Strong I and had the opportunity to raise all claims arising out of the same transaction. Furthermore, because Madeleine Johnson was acting on behalf of the City of Dallas, as plaintiff acknowledges, a principal-agent relationship existed between them.  Because the City of Dallas prevailed in Strong I, plaintiff may not bring this action against Johnson seeking similar relief because privity exists between the two defendants. Accordingly, identity of parties is satisfied.

### C.     Prior judgment was a final judgment on the merits

"Summary judgment is a judgment on the merits; it has the same effect as if the case had been tried by the party against whom judgment is rendered and decided against him." *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th Cir. 1985).  Because this Court rendered summary judgment in Strong I, that prior judgment constituted a final judgment on the merits. Plaintiff does not dispute that the prior judgment was issued by a court of competent jurisdiction.

Accordingly, the Court finds that defendants have established the necessary elements of *res judicata*, and plaintiff's Strong II claims are therefore barred.  In light of the court's ruling on the *res judicata* issue, the court does not reach the issue of whether plaintiff's claims are also barred by collateral estoppel.

For the foregoing reasons, the court GRANTS Defendants' Motion for Summary Judgment.  The claims in this suit are dismissed with prejudice as to all defendants.

**It is so ordered**.

Signed this 29th day of June 2005.

*Jorge A. Solis*
_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE